**STATE of Tennessee, Appellee,**

v.

**Charles LANE, Carl Courtney and David Webb, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

Dec. 14, 1984.

Permission to Appeal Dismissed, as to Webb; Denied as to Lane and Courtney, by the Supreme Court, April 1, 1985.

Jerry B. Bible, Jasper, for Lane.

William C. Killian, Jasper, for Courtney.

Howard G. Swafford, Jasper, for Webb.

W.J. Michael Cody, Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, J. Mike Caputo, Asst. Dist. Atty. Gen., Jasper, J. William Pope, Dist. Atty. Gen., Pikeville, for appellee.

## OPINION

TATUM, Judge.

The defendants Lane and Webb were convicted of bank robbery and Courtney was convicted of armed bank robbery and possession of a sawed-off rifle. Webb was sentenced to 30 years imprisonment and Lane was sentenced to 20 years. Courtney was sentenced to 31 years on the armed bank robbery conviction and 2 years on the illegal weapons conviction.

The issues presented by Courtney and Lane center around the refusal of the trial judge to order a psychiatric examination for Courtney. We find no merit in these issues. We cannot consider the issues presented by Webb for the reasons hereinafter stated.

None of the defendants question the sufficiency of the evidence. It overwhelmingly establishes that Courtney and Lane entered the Inter-Federal Savings and Loan in South Pittsburg, Tennessee, and robbed it. Courtney displayed a sawed-off .22 rifle. Approximately 10 or 15 minutes later a policeman saw an automobile fitting the description of the getaway car with a passenger fitting the description of one of the bank robbers. The officers stopped the car, which was occupied by the three defendants, and retrieved the money taken at the bank from under the front passenger's seat. The sawed-off rifle was also found in the car. It is not necessary to detail the evidence establishing these facts.

We first consider the issues presented by the defendant, Carl Courtney. He says that the trial court erred in refusing his motion for a psychiatric evaluation made prior to and during the trial and that the trial court erred in denying a continuance for the requested psychiatric evaluation. Courtney says that he made an oral motion for a psychiatric examination on April 28, 1983 and filed a written motion supported by counsel's affidavit on May 10, 1983. Neither the motion nor an affidavit of Courtney's attorney is in the record. There was no evidence offered in support of the motion other than counsel's affidavit. Since the affidavit is not in the record, we are forced to glean its contents from argument on the motion. In arguing for a continuance, Courtney's attorney stated that his affidavit contained the following information: that Courtney told him that he (Courtney) had spent from 1969 to 1972 in a mental hospital in Florida, and that Courtney told the attorney that he (Courtney) had received brain surgery and had been treated by Dr. Stephen Ellison Nathelson of Knoxville, Tennessee for psychiatric problems. Based on this information he had received from Courtney and the fact that Courtney did not communicate well with the attorney, the attorney was of the opinion that Courtney had "mental problems." We cannot determine what other information might have been contained in the affidavit. The defendant did not testi-

fy in support of his motion for a psychiatric examination and no record or statement was submitted from the Florida State Mental Hospital where Courtney allegedly was confined. Dr. Nathelson did not testify and no statement or record was submitted to the court from him. No explanation was given for the failure to produce the medical evidence. No hint is given as to the nature of the alleged treatment or "mental problem." The defendant had been tried, and convicted in another case after his confinement in the Florida institution. The trial judge denied the pretrial motion for a continuance and a psychiatric examination, saying that he had nothing before him in support of the motion other than the attorney's affidavit which was based entirely upon what Courtney had told him.

T.C.A. § 33–7–301 authorizes a psychiatric examination "(w)hen a person charged with a criminal offense *is believed* to be incompetent to stand trial, or there is a *question* as to his mental capacity at the time of the commission of the crime." (emphasis supplied). This court has held that the statute vests discretion in granting a psychiatric evaluation with the trial judge. An appellate court will not grant a reversal based on the exercise of discretion absent a showing that the trial judge abused his discretion. *State v. Robinson*, 622 S.W.2d 62 (Tenn.Crim.App.1981). The proof submitted to the trial judge for an evaluation pursuant to § 33–7–301 was not substantial. We do not find that the trial judge abused his discretion in denying the pretrial examination.

The defendant moved for a mistrial for the purpose of granting a psychiatric examination during the trial. On the morning of the second day of trial, defense counsel procured an interview of Courtney by Miss Jan Taylor, who had a Master's Degree in Psychology from the University of Tennessee at Chattanooga and had finished her internship at the Chattanooga Psychiatric Clinic. She visited with Courtney for about one hour and fifteen minutes.

Miss Taylor testified that Courtney would be "worthy—for further evaluation to determine how much, if any, mental instability he had." This was based largely on a diagnosis of a "possible sociopathic tendency," which she explained as follows:

"MR. KILLIAN: (Interposing) Yeah, explain that. I mean explain...

MISS TAYLOR: Okay. Well, he has a very charming nature. And it seems to be absolutely coherent and it's as if he can change his moods at his own will, but it's hard to decide. I cannot not diagnosis him as that, but definitely the tendencies are there. There was some schizophrenic type things too that I noticed. His visions has (sic) had for quite a while, of seeing himself from outside of himself which is another classic indicator of mental disorder.

MR. KILLIAN: Did he relate to you the past history of the accident?

MISS TAYLOR: Yes, he did.

MR. KILLIAN: And the staying in the mental hospital and so forth?

MISS TAYLOR: Yes. His memory is very good, which is another symptom or another classic point of sociopathic personality. His memory and his ability to talk and explain and communicate is, at least, average or above average. And he did explain his accident."

Thus, we see from her testimony that during trial the defendant was "absolutely coherent." His memory and ability to talk, explain and communicate were average or above average.

Miss Taylor did not know the legal definition of insanity. There was no showing that she was aware of what degree of competency the law requires to put a defendant to trial. Her testimony would seem to indicate that he was very competent to stand trial and there is nothing to indicate that he was legally insane at the time the offense was committed. The defendant's testimony was coherent.

After Mr. Courtney testified, his attorney stated to the court that Courtney had given him six other versions of what occurred. The failure of a defendant to give consistent versions of a criminal epi-

sode does not indicate insanity or incompetency to stand trial. Defense counsel also states that Courtney attempted suicide about 7 weeks before trial but trial evidence was that he "scratched" his wrists with disposable razors and the wounds required no medical attention. The trial judge did not abuse his discretion in refusing a mistrial to enable the defendant to undergo further psychological testing. There is no merit in Courtney's issues.

■ The defendant Lane complains of the trial court's refusal to order a psychiatric evaluation of Courtney on the pretrial motion and during trial. Lane says that if Courtney had been given a mental evaluation and found to be incompetent or insane at the time of trial, Courtney's testimony would not have been allowed in evidence. Courtney's testimony inculpated Lane.

Our disposal of Courtney's issues requires no further discussion of this issue presented by Lane. There is no showing that Courtney was not competent to be a witness. See T.C.A. § 24–1–101.

■ Lane also states that the trial judge should have stopped the trial and ordered a mental evaluation of Courtney because Courtney "waved and smiled at the jurors and at times made gestures to the jurors which indicated he was trying to communicate to them through the use of sign language. Defendant Lane candidly states that these alleged incidents are not in the record. Hence, they cannot be considered by us. Lane's issues are overruled.

The defendant Webb says that his arrest was illegal, that the officer did not have probable cause to stop the automobile in which he was riding and make a search and that the identification evidence should have been suppressed. He also says that he was entitled to a severance and that he was prejudiced by the trial misconduct of Charles Lane.

■ The verdict of the jury rendered on June 28, 1983, found Webb guilty. His motion for a new trial was filed on October 10, 1983, approximately 2½ months after the date of the verdict. The trial court lost jurisdiction 30 days after the jury verdict and the motion for a new trial filed later than 30 days from the date of the jury verdict was a nullity.

Prior to May 26, 1983, T.C.A. § 40–35–401 provided that the time for the filing of a motion for a new trial should commence to run upon entry of judgment. However, effective May 26, 1983, the Legislature amended T.C.A. § 40–35–401 to provide that the time for filing of a motion for a new trial commenced to run on the date of the verdict in conformity with Tennessee Rule of Criminal Procedure 33. That rule provides for a 30-day period for filing new trial motions commencing on the date of the verdict. Because the issues raised by Webb have not been presented to the trial court in a timely filed motion for a new trial, the issues must be considered waived. See T.R.A.P. 3(e), *State v. Givhan*, 616 S.W.2d 612 (Tenn.Crim.App.1980).

■ We note, however, that the defendant was not prejudiced by the failure to file the motion for a new trial within the time required. We have observed that the issues presented on this appeal are without merit.

The judgment of the trial court is affirmed as to all three defendants.

O'BRIEN, Judge, and SAMUEL L. LEWIS, Special Judge, concur.