# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JANUARY 2000 SESSION

**FILED**

February 14, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

|  |  |
|---|---|
| **STATE OF TENNESSEE,** <br> Appellee, <br><br> vs. <br><br> **AIMEE LYNN WOLFE,** <br> Appellant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

C.C.A. No. E1999-01219-CCA-R3-CD

Blount County

Hon. D. Kelley Thomas, Jr., Judge

(Community Corrections Revocation)

**FOR THE APPELLANT:**

**JAMES H. SNYDER, JR.**
Attorney at Law
345 East Broadway Ave.
Maryville, TN 37804

**FOR THE APPELLEE:**

**PAUL G. SUMMERS**
Attorney General & Reporter

**R. STEPHEN JOBE**
Asst. Attorney General
425 Fifth Ave. North
2d Floor, Cordell Hull Bldg.
Nashville, TN  37243-0493

**MICHAEL L. FLYNN**
District Attorney General

**EDWARD P. BAILEY, JR.**
Asst. District Attorney General
942 E. Lamar Alexander Pkwy.
Maryville, TN  37804

OPINION FILED:_____

**AFFIRMED**

**JAMES CURWOOD WITT, JR., JUDGE**

## OPINION

The defendant, Aimee Lynn Wolfe, appeals from the revocation of her Community Corrections sentence by the Blount County Circuit Court. She contends that the trial court erred in revoking her Community Corrections sentence without authorizing a state-funded psychological evaluation for her. Following a review of the record and the briefs of the parties, we affirm the trial court's judgment.

In June 1997 the defendant was charged with four offenses: burglary, a Class D felony, Tenn. Code Ann. § 39-14-402 (1997); aggravated burglary, a Class C felony, Tenn. Code Ann. § 39-14-403 (1997); theft of property valued over $500, a Class E felony, Tenn. Code Ann. § 39-14-103 (1997); and theft of property valued over $1000, a Class D felony, id. She subsequently pleaded guilty to the four charges and received an effective three year sentence to be served in the Community Corrections Program. She was arrested in July 1998 for violating her Community Corrections agreement by failing to report, failing to maintain employment, failing to perform community service work, and failing to pay any monies towards court costs and restitution. For these violations, the defendant was ordered to serve five months in confinement, after which she would continue with the Community Corrections Program by participating in a Teen Challenge program.[1]

After serving her five-month confinement, on March 16, 1999, the defendant was admitted to Teen Challenge as a condition of her Community Corrections sentence. She was discharged from the program the following day for giving false information on her application. She was charged with violating the conditions of her release in the Community Corrections Program by being discharged from Teen Challenge.

---

[1]Teen Challenge is a worldwide organization that offers a rigorous, Christian based alcohol and drug treatment program. The residential program requires the participant to abide by a stringent set of rules. For example, participants may not bring with them, among other things, cigarettes, books, magazines, medication for withdrawal, tapes, records, musical instruments, gum, candy, or pictures of girl or boy friends. Each participant must bring a Bible. Participants agree not to curse, use off-color expressions or gestures, or sing, whistle or hum secular songs. Letter writing to anyone except the participant's immediate family is not permitted. Disciplinary action for infractions includes extra duty, loss of privileges, suspension, or dismissal. See State v. Larry Oliver, No. 03C01-9707-CC-00237 (Tenn. Crim. App., Knoxville, Aug. 20, 1998).

At the start of her revocation hearing, the defendant moved that she be permitted to undergo a psychological evaluation. In support of this motion the defendant's mother testified. She stated that the defendant, at the age of eleven, was abducted and repeatedly raped for three days. The defendant's mother testified that before the abduction the defendant was an honor student, but afterwards, she was a very troubled child. She described the defendant's behavior as "self-destructive" because the defendant would do fine for a time and then she would sabotage her good efforts. After the abduction, the defendant committed the juvenile offenses of theft and shoplifting. She also acquired a drug problem. The defendant entered a psychiatric hospital where she was diagnosed as schizophrenic. She received medication, but it apparently had little effect. In addition to the convictions in the present case, she apparently pleaded guilty to unspecified offenses in Hamilton County.

After the trial court denied the motion for a psychological evaluation, the defendant testified on the issue of the Community Corrections revocation. She dropped out of the GED program just before she was about to take the test. She said that she was promoted to assistant manager where she worked, but then just walked out and never returned. She stated that she quit nursing school. She could not explain her behavior or state a reason for her actions, although she did accept responsibility for her conduct. She agreed that she violated the terms of her community corrections sentence when her conduct at Teen Challenge caused her to be dismissed from the program. The trial court found the defendant had violated the conditions of her Community Corrections sentence, revoked her community corrections placement, and ordered her to serve the remainder of her sentence in confinement. It is this revocation that the defendant is now appealing.

The decision to revoke a Community Corrections sentence rests within the sound discretion of the trial court and will not be disturbed on appeal unless there is no substantial evidence to support the trial court's conclusion that a violation had occurred. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). In reviewing the trial court's finding, it is our obligation to examine the record and determine whether

3

the trial court has exercised a conscientious judgment rather than an arbitrary one. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). If the evidence is sufficient, the trial court may, within its discretionary authority, revoke the Community Corrections sentence and require the defendant to serve her sentence in confinement. Tenn. Code Ann. § 40-36-106(e)(3) (Supp. 1998).

On the record before us, there is no room for doubt that the trial court was justified in finding, first that the defendant violated the terms of her Community Corrections sentence, and second, that revocation was in order.

The defendant complains that the trial court erred by not ordering a psychological valuation. At the start of the revocation hearing, the defendant moved that she be permitted to undergo a psychological evaluation. In support of this motion the defendant's mother testified. After presenting this proof, defense counsel argued, "And all I'm asking for is that we come in with the information on why this is going on. Without that, I don't understand and I can't represent her adequately." The trial court found that the defendant did not indicate that she had any "problem understanding the nature of these proceedings, what her legal position is, or any indication at all that she doesn't understand what she does." The trial court found that she knew right from wrong and denied the motion.

The defendant testified at the revocation hearing. Before revoking the defendant's Community Corrections sentence, the trial court found that there was "evidence that she has suffered from emotional or mental illnesses for quite some time, . . . but she continues to violate the law and continues to not follow the most simple rules of release in the community."

Psychological evaluations are warranted when the defendant's mental capacity at the time of the offense or her competence is questioned. Tenn. Code Ann. § 33-7-301(a) (Supp. 1998) ("When a person charged with a criminal offense is believed to be incompetent to stand trial, or there is a question as to the person's mental capacity at the time of the commission of the crime, the . . . court . . . may

**4**

. . . order the defendant to be evaluated . . . ."); see also State v. West, 728 S.W.2d 32, 34 (Tenn. Crim. App. 1986) ("Before a mental evaluation is required, the evidence must be such as to warrant a belief that the defendant is incompetent to stand trial, or it must be sufficient to raise a question as to his mental capacity at the time of the crime."). In the case at bar, neither the defendant's mental capacity at the time of the offense nor her competence to stand trial or participate in legal proceedings is at issue.

A psychological evaluation may produce results relevant to mitigating a sentence. See, e.g., State v. Reid, 981 S.W.2d 166, 168 (Tenn. 1998) (addressing procedure for offering mental condition testimony as mitigation evidence at the sentencing phase of trial); Cooper v. State, 847 S.W.2d 521, 529 (Tenn. Crim. App. 1992) (endorsing the proposition that evidence of mental impairment, although not helpful during the guilt phase, could still be helpful at the sentencing phase). The standard of review on appeal is abuse of discretion. See State v. Lane, 689 S.W.2d 202, 204 (Tenn. Crim. App. 1984) (decision to deny psychiatric evaluation is reversible only when trial court abuses its discretion). However, we note that in the case at bar the trial court did not increase the term of the defendant's sentence, but merely changed her manner of service from Community Corrections to confinement. Accordingly, a sentencing hearing was not required in this case and the trial court was not required to hear mitigating evidence. See State v. Ervin, 939 S.W.2d 581, 583 (Tenn. Crim. App. 1996) (holding that "when a trial court opts to impose a sentence which exceeds the length of the initial sentence based on a breach of the terms of the sentence, the trial court must conduct a sentencing hearing"); see also Tenn. Code Ann. § 40-35-311(e) (Supp. 1999) ("[T]he trial judge shall have the right . . . to revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . .").

In the case at bar, defense counsel argued that without a psychological evaluation he could not effectively represent the defendant. In her written motion, the defendant requested that the court order a psychological

evaluation and grant a continuance for the evaluation to be performed. However, after the trial court denied the motion requesting a psychological evaluation, the defendant did not renew her request for a continuance despite the mother's testimony that she and the defendant's father were willing to pay for a psychological evaluation if one were not provided by the state. We conclude that the defendant's failure to seek a continuance to obtain a psychological evaluation serves as a waiver of this issue. Moreover, the defendant has not shown how the trial court abused its discretion in denying her motion for an evaluation.

Also, the defendant contends that the trial court failed to consider the issue of an evaluation as it related to sentencing considerations. However, the record indicates otherwise. The trial court heard testimony from both the defendant and her mother regarding the defendant's mental and emotional condition. The trial court found that the defendant "suffered from emotional or mental illnesses for quite some time," but that she was not incompetent. The trial court ordered the defendant to serve her sentence in confinement and credited her with time served in jail and in the Community Corrections Program.

In this case, the defendant wishes to address the treatment of persons who are not so mentally ill that due process would be offended by their conviction, but who, because of mental illness, are not able to perform the conditions of their non-incarcerative sentences as required by law. The trial court may be correct in surmising that this is a pervasive problem in today's society; however, the defendant has not presented any justiciable issues which have merit. Accordingly, we leave this public policy issue for the Legislature to resolve.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

CONCUR:

_____
GARY R. WADE, PRESIDING JUDGE


_____
NORMA McGEE OGLE, JUDGE