# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs October 26, 2010

## STATE OF TENNESSEE v. ANTONIO T. SMITH

**Appeal from the Criminal Court for Hamilton County**
**No. 256121, 268523    Don W. Poole, Judge**

_____

### No.  E2010-00428-CCA-R3-CD - FILED - MAY 5, 2011

_____

In Hamilton County, Appellant, Antonio T. Smith, pled guilty to one count of possession of less than .5 grams of cocaine for resale and one count of attempted possession of contraband in a penal facility.  The trial court sentenced him to an effective sentence of eight years to be served on probation.  Subsequently, a probation violation report was filed, and the trial court held a hearing.  At the conclusion of the hearing, the trial court revoked Appellant's probation and ordered him to serve his six-year sentence in confinement and his remaining two-year sentence on probation.  Appellant appeals the revocation of his probation.  He argues that the trial court abused its discretion in revoking his probation because the testimony of the arresting officers was not credible.  He also claims the trial court erred in denying his request for a mental evaluation.  After a thorough review of the record, we conclude that the trial court did not abuse its discretion.  Therefore, we affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Benjamin L. McGowan, Chattanooga, Tennessee, for the appellant, Antonio T. Smith.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Bill Cox, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### *Factual Background*

On January 21, 2009, Appellant pled guilty to one count of possession of less than .5 grams of cocaine for resale and one count of attempted possession of contraband in a penal facility. The trial court sentenced him to six years for the possession of cocaine and two years for the attempted possession of contraband. These sentences were ordered to be served consecutively to each other. The trial court suspended the sentences and placed Appellant on probation for eight years, the full time of the consecutive sentences.

On July 1, 2009, Appellant's probation officer filed a probation violation report alleging that Appellant: (1) was arrested on June 6, 2009, for possession of marijuana for resale, possession of crack/cocaine for resale, and tampering with evidence and was arrested on July 1, 2009 for felony possession of marijuana, resisting arrest, and assault on police; (2) failed to immediately report these arrests to his probation officer; (3) failed a drug screen test on May 8, 2009, which was positive for marijuana; (4) was past due on his probation supervision fees and had made no payment on his court costs and fines.

Following a hearing, the trial court revoked Appellant's probation on November 2, 2009. Appellant's six-year sentence was ordered to be served in full and his two-year consecutive sentence was ordered to be served on supervised probation.

### ANALYSIS

On appeal, Appellant argues that (1) the trial court abused its discretion in finding that Appellant violated his probation where the evidence was not substantial; and (2) the trial court abused its discretion in denying Appellant's counsel's motion for a forensic mental status exam.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the person has violated a condition of probation. T.C.A. §§ 40-35-310 & -311. After finding a violation of probation and determining that probation should be revoked, a trial judge can: (1) order the defendant to serve the sentence in incarceration; (2) cause execution of the judgment as it was originally entered, or, in other words, begin the probationary sentence anew; or (3) extend the probationary period for up to two years. *See* T.C.A.§§ 40-35-308(c) & -311(e); *State v. Hunter*, 1 S.W.3d 643, 647-48 (Tenn. 1999). The decision to revoke probation rests within the sound discretion of the trial court. *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim.

App. 1991). Revocation of probation and a community corrections sentence is subject to an abuse of discretion standard of review, rather than a de novo standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). An abuse of discretion is shown if the record is devoid of substantial evidence to support the conclusion that a violation of probation has occurred. *Id.*

On appeal, Appellant argues that the evidence is not substantial enough to support revocation because the testimony of the two officers who arrested Appellant for the two offenses allegedly committed while he was on probation was not plausible. He also argues that his own testimony and the testimony of his girlfriend are much more reasonable explanations.

At the revocation hearing, Officer Jeffrey Francis with the Chattanooga Police Department testified regarding his arrest of Appellant on June 6, 2009, for possession of both marijuana and cocaine with intent to sell and tampering with evidence. Officer Francis was responding to a domestic disturbance call for which Appellant was the suspect. When Officer Francis arrived on the street, he spotted Appellant hiding behind a car. After the officer called Appellant out from his hiding place, the officer went to investigate the area where he had been hiding. Office Francis found a bag of marijuana within an arm's length of where Appellant had been hiding. Officer Francis attempted to complete a pat down of Appellant. Appellant immediately reached inside his waistband. Officer Francis grabbed Appellant's hand and noticed a plastic bag hanging out of Appellant's waistband. Officer Francis pulled the bag out of Appellant's pants and discovered what he identified as marijuana. He placed Appellant in the back of his patrol car. After arriving at the jail and getting Appellant out of the patrol car, Officer Francis found what appeared to be crack cocaine scattered in the backseat and a baggie with white residue. Appellant had a couple hundred dollars on his person at the time of his arrest. At the time of the probation hearing, Officer Francis had sent the alleged marijuana and cocaine to the Tennessee Bureau of Investigation ("TBI"), but he had not received the results of the tests. Officer Francis charged Appellant with possession of cocaine with intent to resell, possession of marijuana with intent to resell, and tampering with the evidence.

Officer Gary Williams is employed by the Chattanooga Police Department. On July 1, 2009, Officer Williams was working patrol when he saw Appellant and some unknown women standing outside an apartment building. As Officer Williams pulled up to the gathering, Appellant dropped something on to the ground. When Officer Williams stopped and got out of the patrol car, Appellant began walking away from the area. The officer went to investigate the area where Appellant had been standing and found a marijuana blunt and a marijuana cigar. Officer Williams called to Appellant to come back. Officer Williams ran after Appellant and caught up to him. Appellant placed his hand in his right, front pocket, and Officer Williams grabbed Appellant's arm. Appellant began to flail his arms and

struggle with Officer Williams. Appellant got away from Officer Williams and tripped over a mailbox. Officer Williams got on top of Appellant and tried to hold Appellant's hands on the ground. The officer called for back-up and was joined within one minute by other officers. At that point, Officer Williams was able to handcuff Appellant. After handcuffing Appellant, the officers found a nickel bag of marijuana in Appellant's right, front pocket.

After finding the bag of marijuana, as well as the marijuana blunt and cigar, Officer Williams attempted to place Appellant in the back of the patrol car. Appellant resisted when Officer Williams tried to get him to sit in the back of the patrol car. Eventually, the officer got Appellant into the back of the patrol car. Appellant was lying on his back and sliding out of the door of the patrol car. He hit Officer Williams in the groin with his knee and then pinned Officer Williams to the door and continued to press his knee into Officer Williams's groin. Officer Williams used his Taser on Appellant who immediately sat down in the patrol car. Officer Williams took Appellant to the hospital and the EMS followed him. Appellant remained in the hospital about thirty or forty-five minutes. At the time of the probation revocation hearing, the case stemming from these incidents was pending in criminal court.

Jamie Bollig, Appellant's probation officer, testified at the hearing. He was put in charge of Appellant on January 23, 2009. He filed the probation violation report on July 6, 2009. The violation report was based on Appellant's two arrests, a positive drug screen for marijuana on May 8, 2009, the fact that Appellant still owed $105 in probation fees, and that he had made no payment towards his court costs and fines.

Tonya Moore, Appellant's girlfriend, also testified at the hearing. She stated that she was present for part of the incident in June 2009. She and Appellant were arguing on her friend's front porch. Her friend called the police and reported a domestic dispute. She gave Ms. Moore the telephone to tell the police Appellant's name and description. Ms. Moore testified that she saw the police search Appellant twice. She was standing on the porch of her friend's house, and Appellant was by a car two houses away. She stated that the officers did not find anything either time they searched him. Ms. Moore maintained that Appellant did not have any marijuana that night and that he does not use marijuana. Appellant derives his income from mowing lawns and raising dogs.

Appellant also testified at the hearing. Appellant testified that on the night in question in June 2009, he was arguing with Ms. Moore in front of her friend's house. She told him that she was going to call the police, so he left. He testified that he was standing on the porch of a nearby house when the police arrived. Appellant walked into the street toward the officers. According to Appellant, Officer Francis attempted to enter the house and became frustrated when he was denied entrance. At that point, Officer Francis announced that he was "fixing to get somebody here," and he proceeded to search Appellant. Appellant stated

that Officer Francis searched him twice and found nothing. During the second search, Officer Francis emptied Appellant's pockets and placed all his belongings on top of the patrol car. At this point, Officer Francis walked over to another gentleman and returned with a bag of marijuana. Officer Francis placed the bag of marijuana with Appellant's belongings.

Appellant also testified regarding his encounter with Officer Williams. He stated that the evening in question he was walking his dogs down the street when he joined a group of people talking and smoking. When Officer Williams drove up, the other individuals dropped what they had been smoking and ran away. According to Appellant, Officer Williams asked Appellant to come over to him. Appellant replied that he had not done anything. Officer Williams grabbed Appellant and pushed him against a fence. Appellant testified that they fell over and Officer Williams was on top of him. Officer Williams called for back-up. Appellant testified that when the other officers arrived, he was beaten by the officers. He also stated that Officer Williams picked up a marijuana cigarette off the ground where the other individuals had been standing. Appellant testified that they kept him outside of the patrol car for an hour, beat him, and when he was placed in the patrol car, used a Taser on him.

As stated above, Appellant's argument against the trial court's revocation of his probation is based upon the testimony of the officers regarding Appellant's two arrests. Essentially, his argument is that the officers' testimony was not credible and that his and Ms. Moore's testimony was credible. "In probation revocation hearings, the credibility of the witnesses is for the determination of the trial judge, who is in the best position to observe witness demeanor. *Bledsoe v. State*, 387 S.W.2d 811, 814 (Tenn. 1965); *Delp*, 614 S.W.2d at 398. As stated above, we review the revocation of probation with an abuse of discretion standard and will reverse only if the record is devoid of substantial evidence to support the trial court's conclusions. *Harkins*, 811 S.W.2d at 82.

The trial court clearly found the testimony of the officers more credible. This Court is not in a position to second guess the trial court's determination with regard to witness credibility. In addition, even apart from the arrests, there is substantial evidence in the record to support the trial court's revocation of Appellant's probation.

Therefore, this issue is without merit.

**Motion for Continuance**

Appellant also argues that the trial court abused its discretion in denying counsel's motion for a continuance to obtain a mental evaluation. During the State's cross-examination of Appellant, the State's attorney asked Appellant if he had had a mental evaluation.

Appellant replied that he had. He was then asked how many, and Appellant replied with an answer that did not make sense. At this point, Appellant's counsel asked to approach the bench. During the bench conference, the following exchange occurred:

> [Appellant's counsel]: I move for a forensic evaluation.
>
> The Court: He's already had a forensic evaluation.
>
> [Appellant's counsel]: Not on this case. One of the concerns I've got, this is the kind of stuff I've had, dealing with him, talking with him, he goes off on a tangent.
>
> The Court: And, of course, he did that before the hearing, I guess, right?
>
> [Appellant's counsel]: Yes, sir. But even, you know, we can finish this, but –
>
> [State's attorney]: You requested this hearing today.
>
> [Appellant's counsel]: I did, I did, I did. And not to delay the hearing, but probably – I'll file a proper motion, because we still have the charges to adjudicate and deal with. I may be getting way ahead of myself.
>
> [State's attorney]: He's had a forensic evaluation before.
>
> [Appellant's counsel]: Yeah, but that was some years ago, I think, wasn't it, . . . .
>
> The Court: No, it was in regard to the –
>
> [Appellant's counsel]: Oh, yes.
>
> The Court: I think I'll overrule it.

Our Court has addressed a remarkably similar situation in *State v. Aimee Lynn Wolfe*, No. E1999-01219-CCA-R3-CD, 2000 WL 151162 (Tenn. Crim. App., at Knoxville, Feb. 14, 2000). In *Aimee Lynn Wolfe*, the defendant was placed in community corrections for service

of her sentence. She violated the terms of her community corrections sentence. *Aimee Lynn Wolfe*, 2000 WL 151162, at *1. At the beginning of her revocation hearing, she moved for a psychological evaluation. *Id.* Her mother testified in support of the motion. The trial court denied the motion. *Id.* At the conclusion of the hearing, the trial court revoked the community corrections sentence and ordered the defendant to serve the remainder of her sentence in confinement. *Id.*

On appeal, the defendant argued that the trial court abused its discretion in failing to authorize a psychological evaluation. This Court stated the following:

> In the case at bar, defense counsel argued that without a psychological evaluation he could not effectively represent the defendant. In her written motion, the defendant requested that the court order a psychological evaluation and grant a continuance for the evaluation to be performed. However, after the trial court denied the motion requesting a psychological evaluation, the defendant did not renew her request for a continuance despite the mother's testimony that she and the defendant's father were willing to pay for a psychological evaluation if one were not provided by the state. We conclude that the defendant's failure to seek a continuance to obtain a psychological evaluation serves as a waiver of this issue.

*Id.* at *3.

In the case at hand, as the State points out in its brief, Appellant never actually requested a continuance. Appellant merely requested a mental evaluation. In addition, in the discussion with the trial court regarding the request, Appellant's counsel seems to acquiesce to the assistant district attorney's and trial court's statements that Appellant had recently had a mental evaluation. At the conclusion of the discussion, Appellant's counsel still had not moved for a continuance for a mental evaluation. Therefore, we agree with our previous decision in *Aimee Lynn Wolfe*, that this constitutes a waiver of the issue.

Furthermore, "[w]hen a defendant charged with a criminal offense is believed to be incompetent to stand trial . . . the criminal . . . court judge may . . . order the defendant to be evaluated on an outpatient basis." T.C.A. § 33-7-301(a)(1). Again, we review such decisions under an abuse of discretion standard. *State v. Lane*, 689 S.W.2d 202, 204. For a defendant to succeed on such a request, he must present "substantial" proof that he lacks competence. *Id.*

In the case at hand, Appellant presented no proof to the trial court to prove his incompetence. Appellant merely referenced his testimony which admittedly was somewhat rambling. However, it was clear that Appellant understood why he was at the hearing, the criminal issues at hand, and the potential outcome of the hearing. Therefore, we conclude that the trial court did not abuse its discretion in denying Appellant's request for a mental evaluation.

This issue is without merit.

## **CONCLUSION**

For the foregoing reasons, we affirm the revocation of Appellant's probation.


_____
JERRY L. SMITH, JUDGE