IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 7, 2008 Session

## STATE OF TENNESSEE v. JOHNNY BERNARD TEMPLE

**Appeal from the Circuit Court for Lauderdale County**
**No. 8009      Joseph H. Walker, III, Judge**

_____

**No. W2007-01657-CCA-R3-CD  - Filed February 20, 2009**
_____

The Defendant, Johnny Benard Temple, was convicted of eight counts of delivery of .5 ounces or more of marijuana, a Schedule VI controlled substance, and two counts of delivery of .5 grams or more of cocaine, a Schedule II controlled substance.  He was sentenced as a career offender to an effective sentence of 102 years in the Department of Correction.  In this direct appeal, he argues that (1) the trial court improperly denied his two requests for a continuance; and (2) the trial court ordered consecutive sentencing in violation of the Sixth Amendment to the United States Constitution.[1]  We conclude that these arguments lack merit and accordingly affirm.  Because of certain inconsistencies between the Defendant's sentences as announced at his sentencing hearing and his sentences as recorded on his judgment forms, however, we remand for clarification and entry of corrected judgments.


**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;**
**Remanded**

DAVID H. WELLES, J., delivered the opinion of the court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

Ryan B. Feeney, Selmer, Tennessee, (on appeal); and Scott A. Lovelace, Ripley, Tennessee, (at trial) for the appellant, Johnny B. Temple.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; and D. Michale Dunavant, District Attorney General, for the appellee, State of Tennessee.



**OPINION**

---

[1] We note that the Defendant initially also raised an issue concerning the racial composition of his jury.  He relied primarily on Batson v. Kentucky, 476 U.S. 79 (1986).  During oral argument in this Court, Defendant's counsel announced that he was withdrawing this issue on appeal.

**Factual Background**

The police gathered evidence against the Defendant by arranging for a confidential informant (CI) to purchase drugs from him at his home on nine occasions between February 24, 2006, and April 6, 2006. Testifying against the Defendant, Officer John Thompson of the Lauderdale County Sheriff's Department first described the procedures applicable to each of his undercover operations. He said that a CI is paid $100 per day regardless of whether or not the CI completes a drug buy and regardless of how many drug buys the CI completes. He stated that before each operation, a CI is met by police at a designated location. Police search the vehicle to be used in the operation and search the CI's person. The CI is then wired with both audio and visual recording capabilities and given money to be used to purchase drugs. The CI is then followed to the site of the prospective buy. The CI is monitored by officers through a live audio feed. The video feed, transmitted by microwave from the CI's location, is recorded in the observation vehicle but is not viewed as it records.

A drug buy may or may not take place. Either way, the CI meets officers back at the designated location. The video tape is reviewed. Both the audio and video tapes are labeled with a case number and the target's name. Any purchased drugs are turned over, field tested, labeled with a case number and the target's name, and sealed into an evidence submission envelope. The envelopes are then stored in a locked area at the Lauderdale County Sheriff's Office until they can be delivered to the Tennessee Bureau of Investigation (TBI). After being received back from the TBI, evidence is stored in that location until any trial that may take place. Officer Thompson confirmed that these chain of custody procedures were used with all of the evidence in this case.

Officer Thompson testified that he oversaw controlled buys from the Defendant on February 24, 2006, March 3, 10, 17, 21, 23, 29, and 31, 2006, and April 6, 2006. On each of those occasions he and his CI, Greg Blurton, followed the procedures detailed above, with the exception of the February 24, 2006 buy. Because he did not know whether the Defendant would search or interrogate Blurton, Officer Thompson chose not to wire Blurton with either video or audio recording equipment on that occasion.

Officer Thompson testified that each buy took place at the Defendant's house. He checked both the video and audio recording equipment before each recorded buy, and he testified that the equipment accurately recorded and reproduced images and sound. Officer Thompson then detailed the amount of money given to Blurton for each buy, as well as the type of drugs received in exchange. On every occasion before March 31, Blurton returned only with a substance Officer Thompson believed to be marijuana. On March 31 and April 6, 2006, Blurton returned with what Officer Thompson believed to be both marijuana and cocaine. Each was bagged separately on those occasions. Officer Thompson testified that he bagged the evidence and that either he or Investigator Brian Kelley initialed each evidence bag. The State introduced each evidence bag as an exhibit. The State also played for the jury the videos of the buys that took place between March 3 and April 6 and introduced the videos into evidence. Officer Thompson confirmed on cross-examination that the tapes had not been edited or enhanced. He also confirmed that Blurton had not received a "deal" in exchange for his cooperation and that he was not "in trouble" when any of the buys took place.

Investigator Brian Kelley of the Lauderdale County Sheriff's Office also testified. He assisted Officer Thompson with each of Blurton's buys from the Defendant. Investigator Kelley corroborated the undercover procedures detailed by Officer Thompson. On cross-examination, Kelley estimated that the meeting place at which he and Officer Thompson met Blurton after each buy was about three or three and a half miles from the Defendant's house. About five or ten minutes passed between each buy and his receipt of the evidence from Blurton, during which time Blurton was alone in his vehicle with the evidence. Investigator Kelley and Officer Thompson maintained audio surveillance of Blurton during that time, however.

Special Agent Jessica Marquez, a TBI forensic scientist, also testified. After being certified by the trial court as an expert in drug identification, she described the results of the tests she had performed on each of the drug exhibits in this case.

The evidence bag from the February 24 buy contained 25.9 grams of marijuana. The evidence bag from the March 3 buy contained 52.3 grams of marijuana. The evidence bag from the March 10 buy contained 48.7 grams of marijuana. The evidence bag from the March 17 buy contained 52.3 grams of marijuana. The evidence bag from the March 21 buy contained 46.2 grams of marijuana. The evidence bag from the March 23 buy contained 48.2 grams of marijuana. The evidence bag from the March 29 buy contained 49.8 grams of marijuana. The evidence bag from the March 31 buy contained 47.9 grams of marijuana and 1.9 grams of powder cocaine. Finally, the evidence bag from the April 6 buy contained 48.7 grams of marijuana and 1.7 grams of powder cocaine.

Greg Blurton also testified, confirming his involvement as the CI assigned to buy drugs from the Defendant on each of the nine occasions described above. He also confirmed the procedures described by Officer Thompson and Investigator Kelley. Blurton remembered that on his second trip to the Defendant's house, March 3, the Defendant met him at the front of the house and asked him what he wanted. Blurton told him, and the Defendant walked around the side of the house. A few minutes later, he came back and invited Blurton into the house, where the Defendant weighed the drugs on digital scales and made the sale. Most visits were similar to this one.

Blurton also noted that on one early occasion, he noticed cocaine on a table inside the Defendant's house. He reported this to Officer Thompson and Investigator Kelley. On that basis, they instructed Blurton to ask for cocaine as well as marijuana during his March 31 and April 6 visits and gave him extra money for that purpose.

The Defendant chose not to testify and presented no proof. The jury convicted him of ten of the eleven counts of delivery of a controlled substance, finding him not guilty of delivering marijuana on February 24. He now appeals.

**Analysis**

**I. Denial of Continuance**

Immediately before trial the Defendant moved for continuances on two separate grounds. First, his counsel, based on recent behavior displayed by the Defendant, expressed concern that the Defendant might be incompetent to stand trial. He moved for a continuance so that the Defendant could be mentally evaluated. After this motion was denied, the Defendant moved for a continuance so that he could dismiss his counsel and retain private counsel. The trial court also denied this motion.

The request for a continuance is a matter that addresses itself to the sound discretion of the trial judge, and we will not disturb the trial court's decision unless the trial court abused this discretion. Moorehead v. State, 409 S.W.2d 357, 358 (Tenn. 1966). An abuse of discretion is demonstrated by showing that the failure to grant a continuance denied the defendant a fair trial or that it could be reasonably concluded that a different result would have followed had the continuance been granted. State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995) (citing State v. Wooden, 658 S.W.2d 553, 558 (Tenn. Crim. App. 1983).

### A. Motion to Continue for Reason of Mental Health

With respect to the Defendant's competence to stand trial, defense counsel stated that he had "some serious concerns about his ability to stand trial for psychological or psychiatric observations. I don't know if he's going to be able to, in his state of mind, adequately assist . . . in defending the charges against him." Counsel presented no additional proof of the Defendant's psychological condition, but he moved for a continuance "for the limited purpose of a competency exam or a psychological evaluation."

On appeal, the Defendant contends that the trial court incorrectly treated his motion as an attempt to give notice of an insanity defense. The record shows that the trial court correctly considered the motion in terms of the Defendant's "mental ability to assist," however.

Tennessee Code Annotated section 33-7-301(a)(1) states that "[w]hen a defendant charged with a criminal offense is believed to be incompetent to stand trial . . . the criminal . . . court judge may . . . order the defendant to be evaluated on an outpatient basis." This decision is subject to the abuse of discretion standard. State v. Lane, 689 S.W.2d 202, 204. To be entitled to such an order, however, a Defendant must present "substantial" proof that he lacks competence. Id. The Defendant has failed to do so here. We accordingly conclude that the trial court did not abuse its discretion in denying a continuance for a competency exam.

### B. Motion to Continue in Order to Retain Private Counsel

As to his motion for a continuance in order to retain private counsel, the Defendant has waived this issue by his failure to raise it in his motion for a new trial. See Tenn. R. App. P. 3(e), 36(a). Further, we conclude it does not rise to the level of plain error. See Tenn. R. Crim. P. 52(b).

> When an accused seeks to substitute counsel, the accused has the burden of establishing to the satisfaction of the trial judge that (a) the representation being furnished by counsel is ineffective, inadequate, and falls below the range of

competence expected of defense counsel in criminal prosecutions, (b) the accused and appointed counsel have become embroiled in irreconcilable conflict, or (c) there has been a complete breakdown in communications between them. Whether an accused is entitled to a substitution of counsel is a question which addresses itself to the sound discretion of the trial court.

State v. Gilmore, 823 S.W.2d 566, 568-69 (Tenn. Crim. App. 1991) (footnotes omitted). In this case, the Defendant said he wanted the trial court to appoint substitute counsel because his counsel had not begun to meet with him until the end of January, approximately three to four weeks before trial, and because his counsel had not shown him the State's recordings of his drug buys until about a week before trial. We cannot conclude that this testimony demonstrates any of the three Gilmore factors cited above. The Defendant testified that his counsel communicated the State's offers to him and that he chose to proceed to trial because he felt the offers were unsatisfactory. No evidence appears of an irreconcilable conflict, and communications between the Defendant and his counsel continued through trial.

We therefore conclude that no clear and unequivocal rule of law was breached by the trial court in this case. The Defendant is therefore not entitled to plain error relief. See State v. Smith, 24 S.W.3d 274, 282 (Tenn. 2000) (adopting the factors outlined in State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).

**II. Sentencing**

On appeal, the party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Comments; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). When a defendant challenges the length, range, or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record with a presumption that the determinations made by the court from which the appeal is taken are correct. Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Pettus, 986 S.W.2d 540, 543-44 (Tenn. 1999); see also State v. Carter, 254 S.W.3d 335, 344-45 (Tenn. 2008). If our review reflects that the trial court failed to consider the sentencing principles and all relevant facts and circumstances, then review of the challenged sentence is purely de novo without the presumption of correctness. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see also Carter, 254 S.W.3d at 344-45.

In conducting a de novo review of a sentence, this Court must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the

defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b); see also Carter, 254 S.W.3d at 343; State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002).

The Defendant's conduct occurred subsequent to the enactment of the 2005 amendments to the Sentencing Act, which became effective June 7, 2005. The amended statute no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. As further explained by our supreme court in Carter,

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is "consistent with the purposes and principles of [the Sentencing Act]." [Tenn. Code Ann.] § 40-35-210(d). Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," [Tenn. Code Ann.] § 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," [Tenn. Code Ann.] § 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," [Tenn. Code Ann.] § 40-35-103(5).

Id. (footnote omitted).

The 2005 Amendment to the Sentencing Act deleted appellate review of the weighing of the enhancement and mitigating factors, as it rendered these factors merely advisory, as opposed to binding, upon the trial court's sentencing decision. Id. Under current sentencing law, the trial court is nonetheless required to "consider" an advisory sentencing guideline that is relevant to the sentencing determination, including the application of enhancing and mitigating factors. Id. at 344. The trial court's weighing of various mitigating and enhancing factors is now left to the trial court's sound discretion. Id. Thus, the 2005 revision to Tennessee Code Annotated section 40-35-210 increases the amount of discretion a trial court exercises when imposing a sentencing term. Id. at 344.

To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See id. at 343; State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001). If our review reflects that the trial court applied inappropriate mitigating and/or enhancement factors or otherwise failed to follow the Sentencing Act, the presumption of correctness fails and our review is de novo. Carter, 254 S.W.3d at 345.

The Defendant was convicted of two counts of delivery of .5 grams or more of cocaine, a Class B felony. See Tenn. Code Ann. § 39-17-417(c)(1). As a career offender, the sentence for these crimes is the maximum sentence within Range III for the crime. See Tenn. Code Ann. § 40-35-108(c). The authorized sentence for the Defendant's Class B felony convictions is therefore thirty years. See Tenn. Code Ann. § 40-35-112(c)(2).

The Defendant was convicted of eight counts of delivery of .5 grams or more of marijuana, a Class E felony. See Tenn. Code Ann. § 39-17-417(g)(1). As a career offender, the sentence for these crimes is the maximum sentence within Range III for the crime. See Tenn. Code Ann. § 40-35-108(c). The authorized sentence for the Defendant's Class E felony convictions is therefore six years. See Tenn. Code Ann. § 40-35-112(c)(5).

The presentence report in this case reflects that the Defendant is a single male fifty-one years of age at the time of sentencing. He dropped out of high school in the tenth grade. He has high blood pressure and diabetes. The Defendant reported that he had worked steadily for a paving company from 1998 to 2005, but he was employed only sporadically thereafter. His record of felonies includes a 1984 conviction for burglary, two 1993 federal court convictions for distribution of cocaine, and convictions for delivery and possession of marijuana in 2003. His record also contains misdemeanor convictions for evading arrest, reckless driving, and DUI.

The trial court found as an enhancement factor that the Defendant had "a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range." Tenn. Code Ann. § 40-35-114(1). It found as a mitigating factor that the Defendant's conduct "neither caused nor threatened serious bodily injury." Tenn. Code Ann. § 40-35-113(1). Noting its opinion that "[t]he enhancing factors greatly outweigh mitigating factors," the trial court sentenced the Defendant to serve thirty years for each of his two convictions for delivery of cocaine. It also sentenced him to serve six years for each of his eight convictions for delivery of marijuana.

The trial court concluded that the Defendant was eligible for consecutive sentencing based on its findings that he is "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood" and that he is "an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(1), (2). The trial court ordered the Defendant to serve one of his convictions for delivery of cocaine concurrent to one of his convictions for delivery of marijuana, for an effective sentence of thirty years on those two counts. It ordered the Defendant to serve consecutively his remaining sentence for delivery of cocaine and his remaining seven sentences for delivery of marijuana, for an effective sentence of seventy-two years on those eight counts. The Defendant therefore received a total effective sentence of 102 years in the Tennessee Department of Correction.

### A. Violation of Sixth Amendment Right to a Jury Trial

The United States Supreme Court has held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). The 2005 amendment to the Tennessee Sentencing Reform Act of 1989 brought the act into conformity with that rule. Carter, 254 S.W.3d at 343. The Defendant does not challenge the length of his sentences on each count, but he does argue that the trial court's order of consecutive sentencing violated Apprendi because it increased the penalty for his crimes while resting on non-jury findings that he is a professional criminal and that he has an extensive criminal record.

Our supreme court recently addressed the issue of whether a trial court's imposition of consecutive sentences under Tenn. Code Ann. § 40-35-115 complies with Apprendi. In deciding that it does comply, the supreme court found persuasive the argument that

> '[t]he court's decision to require that separate sentences be served consecutively in no way increases the penalties for the individual crimes. . . . Consecutive sentences are separate punishments for different offenses, and two sentences do not become a single sentence by virtue of their running consecutively. Thus, the principles underlying Apprendi do not apply to consecutive sentences because a judge's decision on how two separate sentences for two distinct crimes shall be served is entirely different from the jury's determination of whether the elements of a crime, necessary for a particular sentence for that crime, have been committed.'

State v. Allen, 259 S.W.3d 671, 688-89 (Tenn. 2008) (quoting State v. Keene, 927 A.2d 398, 407-08 (Me. 2007)). The Defendant's claim therefore lacks merit.

### B. Variance in Judgment Forms

Although the Defendant did not raise the issue, we note that a variance exists between the concurrent and consecutive sentences as announced by the trial court and the sentences as recorded on the judgment forms in this case. The trial court ordered that Counts One and Two be served concurrent to one another and that Counts Three through Ten be served consecutive to each other and consecutive to Counts One and Two.

The Defendant's judgment forms are inconsistent with these orders, however. The forms for Counts One and Two order that the sentences for each be served concurrent to the other, but do not specifically state whether they should be served consecutive to any other counts. The form for Count Three orders that its sentence be served concurrent to Counts Four through Ten. The form for Count Four orders that its sentence be served concurrent to Count Three and to Counts Five through Ten. The form for Count Five, however, orders that its sentence be served concurrent to Count Three, and to Counts Six through Ten, but not to Count Four. The forms for Counts Six through Ten order that the sentences for each be served concurrent to Count Three only. Each of the forms for Counts Three through Ten orders that the sentences for each be served consecutive to Counts One and Two only. Because these orders are unclear and inconsistent with the Defendant's sentences as announced at his sentencing hearing, we remand for clarification of the sentences and entry of corrected judgments.

### Conclusion

Based on the foregoing authorities and reasoning, we affirm the Defendant's convictions as well as his sentences as announced by the trial court at the Defendant's sentencing hearing. We remand for clarification of the Defendant's sentences as reflected on the judgment forms.

_____
DAVID H. WELLES, JUDGE