# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs April 2, 2024

## STATE OF TENNESSEE v. JOSHUA LEE ENOCH

**Appeal from the Circuit Court for Henry County**
**No. 16734      Bruce Irwin Griffey, Judge**

_____

### No. W2023-01032-CCA-R3-CD

_____

A Henry County jury convicted the Defendant, Joshua Lee Enoch, of two counts of rape and one count of aggravated statutory rape, and the Defendant received an effective sentence of twelve years in the Tennessee Department of Correction.  On appeal, the Defendant raises the following issues:  (1) whether the evidence was legally sufficient to sustain his convictions;  (2) whether the trial court committed plain error in denying two motions for a competency evaluation; (3) whether the trial court committed plain error in denying his motion for a continuance; and (4) whether he is entitled to relief on the basis of cumulative error.  Upon our review, we respectfully affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgments of the Circuit Court Affirmed

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Jacob P. Mathis, Clarksville, Tennessee (on appeal and at trial); and Tiffany D. Leffler, Clarksville, Tennessee (at trial), for the appellant, Joshua Lee Enoch.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; J. Neil Thompson, District Attorney General; and Courtney Morgan Crocker, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

In March 2021, J.B.[1] and her sister argued with their father at their home in Paris, Tennessee. J.B. was fourteen years old at the time, and her sister was sixteen. Their father told them to leave, and the sisters went to their friends' house.

Their friends were not home when the sisters arrived, but their father, the Defendant, was. The three of them went down some stairs to a bedroom converted from a garage, and J.B. sat between her sister and the Defendant on a couch. They smoked two "blunts" of marijuana that the Defendant supplied. The Defendant also gave the sisters Xanax, and he gave J.B. alcohol.

After taking the substances provided by the Defendant, J.B.'s sister passed out on the couch. J.B. later testified that she did not "remember very much detail" because she "was on drugs." However, J.B. did recall that while she sat on the couch with the Defendant, he touched her vagina underneath her clothes. She remembered being in the Defendant's bedroom but could not remember how she got there. She did not remember removing her clothes but remembered being naked. J.B. recalled being on her back, the Defendant being on top of her, and his penis being inside her vagina. She could not recall anything about the Defendant's body with specificity and could not recall if he was naked or clothed during the penetration. She also did not remember getting dressed or leaving the bedroom after the incident.

About two weeks later, J.B. told her friend, C.L., what had happened to her.[2] After also telling her sister, J.B. eventually told a counselor at her school what had happened. The school counselor reported the incident to the Department of Children's Services, who in turn referred the matter to Lieutenant Jeff Smith with the Paris Police Department.

Lieutenant Smith interviewed the Defendant, who acknowledged that he had allowed the sisters to stay at his house following an argument with their father. After first denying that anything happened between J.B. and himself, he said that J.B. "rubbed up against him and asked him to go to his room." He also acknowledged that he "may have smoked marijuana with them once or twice." The Defendant stated that his wife had been prescribed Xanax, noting "that Xanax is a drug that could cause you to get raped" and "you

---

[1]    It is the custom of this court to identify the victims of sexual offenses only by their initials.

[2]    At the time of trial, C.L. was seventeen years old and was married to the Defendant's son. Because she was a minor at the time of her testimony, we also identify her by her initials only.

don't ever remember what happens" when you take the drug. The Defendant denied that anything further happened between himself and J.B.

A Henry County grand jury charged the Defendant with rape of a victim less than eighteen years of age, accomplished without her consent and, alternatively, while knowing that the victim was "mentally defective, mentally incapacitated[,] or physically helpless." *See* Tenn. Code Ann. § 39-13-503(a)(2), (a)(3). The grand jury also charged the Defendant in a third count with aggravated statutory rape. *See* Tenn. Code Ann. § 39-13-506(c). The Defendant was tried on March 29, 2023.

At trial, the State's evidence established the facts noted above. In his defense, the Defendant called C.L. as a witness. C.L. recalled that the victim "said that she had slept with an older gentleman and it was [the Defendant]." The victim was "anxious," "pale[,] and teary-eyed" when she made her disclosure to C.L.

C.L. remembered that J.B. had been inconsistent when telling her where the incident happened, once saying that something happened downstairs and a different time saying something occurred upstairs. C.L. contacted the defense because she thought J.B. might be telling multiple versions of events. J.B. said that she had asked the Defendant for money, but she told C.L. that the request was not blackmail. C.L. acknowledged that when she went to the Defendant's house around the time of the offenses, she and the sisters smoked marijuana, used Xanax, and drank alcohol.

At the conclusion of the proof, the jury found the Defendant guilty of all charges. Following a sentencing hearing on July 17, 2023, the trial court imposed concurrent sentences of twelve years for each rape conviction and four years for the aggravated statutory rape conviction. Without first filing a motion for a new trial, the Defendant filed a notice of appeal two days later on July 19, 2023.

## ANALYSIS

In this appeal, the Defendant raises the following issues: (1) whether the evidence was legally sufficient to sustain his convictions; (2) whether the trial court committed plain error in denying two pretrial motions for a competency evaluation; (3) whether the trial court committed plain error in denying his motion for a continuance; and (4) whether he is entitled to relief on the basis of cumulative error. We address each of these issues in turn.

### A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant challenges the legal sufficiency of the evidence supporting his convictions. He argues that the victim was not credible because her memories were not specific, that she continued to visit the Defendant's home after the offenses, and that she reported the offenses only after the Defendant refused to give her money. The Defendant also asserts that "[o]ther than a troubled teenager's inconsistent statements, there was no proof at trial sufficient to rise to the heightened requirement of beyond a reasonable doubt." In response, the State argues that the proof is legally sufficient to support each of the Defendant's convictions. We agree with the State.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*, 669 S.W.3d 753, 772 (Tenn. 2023). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotation marks and citation omitted).

### 2. Rape and Aggravated Statutory Rape

In Counts 1 and 2 of the indictment, the Defendant was convicted of rape. As charged in this case for Count 1, rape is "unlawful sexual penetration of a victim by the defendant," and the "sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent[.]" Tenn. Code Ann. § 39-13-503(a)(2). "The issue of consent is a question for the jury." *State v. Buchanan*, No. M2017-02268-CCA-R3-CD, 2019 WL 852192 (Tenn. Crim. App. Feb. 21, 2019), *perm. app. denied* (Tenn. Apr. 11, 2019).

As charged in Count 2, rape is the "unlawful sexual penetration of a victim by the defendant," and the "defendant knows or has reason to know that the victim is: (A) Mentally defective; (B) Mentally incapacitated; [or] (C) Physically helpless[.]" *Id.* § 39-13-503(a)(3). Under both theories of rape, the term "sexual penetration" is defined as "sexual intercourse, . . . or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body, but emission of semen is not required[.]" Tenn. Code Ann. § 39-13-501(7).

In Count 3 of the indictment, the Defendant was charged with aggravated statutory rape. As charged in this case, aggravated statutory rape is "the unlawful sexual penetration of a victim by the defendant" when the victim "is at least thirteen (13) but less than eighteen (18) years of age and the defendant is at least ten (10) years older than the victim." Tenn. Code Ann. § 39-13-506(c).

The Defendant's arguments focus exclusively on the victim's credibility, and he invites us to reweigh the evidence or to disturb the jury's determinations on appeal. We respectfully decline to do so, particularly in light of the standard of appellate review. In reviewing the legal sufficiency of the convicting evidence, the law requires us to look at all the evidence and accredit the testimony of the State's witnesses when doing so. *Shackleford*, 673 S.W.3d at 250. This standard is intentionally deferential, as it seeks to "impinge[] upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Jackson*, 443 U.S. at 319.

Thus, in looking at the victim's testimony in this case, we take her testimony as being true to give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In so doing, we observe that "it is well-settled law in Tennessee that the testimony of a victim, by itself, is sufficient to support a conviction." *State v. Bonds*, 189 S.W.3d 249, 256 (Tenn. Crim. App. 2005) (citation and internal quotation marks omitted). Indeed, the victim's testimony requires no corroboration to sustain a conviction. *State v. Collier*, 411 S.W.3d 886, 899 (Tenn. 2013) ("[I]t has long been the rule in our state that the uncorroborated testimony of a minor victim may be sufficient to sustain a conviction for forcible or coercive sex offenses such as simple rape."). As such, it is not the role of the appellate court, properly conceived, to "reevaluate the credibility of the witnesses or to revisit inconsistencies in the testimony[,] should there be any." *State v. Shaffighi*, No. E2022-00525-CCA-R3-CD, 2023 WL 8666321, at *4-5 (Tenn. Crim. App. Dec. 15, 2023) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. May 17, 2024).

Crediting the victim's testimony, as we must, we conclude that the record contains sufficient evidence to support the Defendant's convictions for rape and aggravated

statutory rape. The victim testified that she was fourteen years old at the time of the rape, and Lieutenant Smith testified that the Defendant was thirty-eight years old. When J.B. arrived at the Defendant's home, he gave her marijuana, Xanax, and alcohol. After ingesting the drugs and alcohol, the victim recalled being in the Defendant's bedroom. She remembered being naked and lying in bed with him. The victim testified that, at some point, the Defendant got on top of her and penetrated her vagina with his penis.

With respect to the offense of rape accomplished without the victim's consent, this court has affirmed that "a fourteen-year-old minor [is] legally incapable of consenting to sexual penetration by the defendant." *State v. Steele*, No. M2023-00695-CCA-R3-CD, 2024 WL 2783712, at *5 (Tenn. Crim. App. May 30, 2024). In other words, "a minor cannot consent to any form of statutory rape, rape of a child, or rape by coercion." *Id.* (citing cases). As this court has explained,

> We see no reason to conclude that a fourteen-year old who would be incapable of consenting to a statutory rape would somehow be capable of consenting to a rape by coercion. Such a conclusion is contradictory to the special protections that the legislature and supreme court have carved out for sexual offenses committed against minors.

*State v. Chandler*, 2014 WL 3055972, at *18 (Tenn. Crim. App. July 7, 2014), *perm. app. denied* (Tenn. Nov. 20, 2014).

Even if J.B. were legally capable of consenting to the rape—and she was not—a rational juror could find that she did not actually consent, given her physical condition after she took the substances provided by the Defendant. *See State v. Wallace*, No. W2018-01649-CCA-R3-CD, 2020 WL 768731, at *10 (Tenn. Crim. App. Feb. 14, 2020) ("The evidence viewed in the light most favorable to the State was that the victim awoke in her bed, after consuming alcohol, to find the Defendant undressing her. He inserted his fingers into her vagina and then his penis. . . . This is sufficient evidence from which a jury could conclude beyond a reasonable doubt that the Defendant was guilty of rape by way of sexual penetration of the victim without the victim's consent."), *perm. app. denied* (Tenn. June 5, 2020); *State v. Valentine*, No. W2018-01400-CCA-R3-CD, 2020 WL 41925, at *8 (Tenn. Crim. App. Jan. 3, 2020) (concluding that circumstantial evidence established that the victim was unable to consent given her level of intoxication), *no perm. app. filed*; *cf. Steele*, 2024 WL 2783712, at *5 ("Short of wearing a 'don't touch' sign to bed, one should be able to sleep at night without the danger of communicating consent to any and all sexual contact by simply being asleep."). In our view, a rational juror could conclude that the victim did not, and could not, consent to the Defendant's actions and that the Defendant knew or had reason to know that she did not consent.

6

With respect to the offense of rape when the Defendant had reason to know that the victim was mentally incapacitated or physically helpless, J.B. testified that she had smoked marijuana, taken Xanax, and drank alcohol supplied by the Defendant. She testified about how these substances affected her, stating that she was unable to remember "very much detail" about the offenses because she "was on drugs." In addition, she also testified about the effect of these substances on her sister, who passed out after taking the same drugs provided by the Defendant. "The jury is entitled to utilize its common sense in evaluating the entirety of the evidence." *State v. Young*, No. 01C01-9605-CC-00208, 1998 WL 258466, at *11 (Tenn. Crim. App. May 22, 1998). As such, although the proof is not overwhelming, we conclude that the direct and circumstantial evidence was nevertheless legally sufficient to establish that she was mentally incapacitated or physically helpless at the time of the rape and that the Defendant, having provided the intoxicants to the victim, had reason to know of the victim's condition. *See State v. Cochran*, No. E2023-00142-CCA-R3-CD, 2023 WL 8231866, at *6 (Tenn. Crim. App. Nov. 28, 2023) (stating that testimony of victim's intoxication and inability to remember was evidence of her being physically helpless at the time of the rape), *no perm. app. filed*; *State v. Foster*, No. E2018-01205-CCA-R3-CD, 2019 WL 1546996, at *17 (Tenn. Crim. App. Apr. 9, 2019) (concluding that the evidence was legally sufficient for a jury to find that the victim was physically helpless when the defendant "knew the victim was very intoxicated before he had sex with her"), *no perm. app. filed*; *State v. Reinsberg*, No. W2014-02436-CCA-R3-CD, 2016 WL 4009666, at *7 (Tenn. Crim. App. July 22, 2016) ("The victim testified that she went in and out of consciousness during the rape and that she did not call for help because she was too intoxicated to fully understand the situation. . . . The jury obviously accredited the victim's testimony that she was physically incapacitated during most of the encounter with Defendant due to her intoxication and that she did not consent to sexual contact with him."), *perm. app. denied* (Tenn. Nov. 22, 2016).

Finally, with respect to the Defendant's conviction for aggravated statutory rape, the proof established that the victim was fourteen years old at the time of the Defendant's actions. The proof also established that the Defendant was thirty-eight years old and was thus more than ten years older than the victim. And, as we discussed above, the victim's testimony established the fact of penetration. *See* Tenn. Code Ann. § 39-13-506(c).

Viewing the evidence in a light most favorable to the State, we conclude that a rational juror could find the essential elements of rape in each count and the essential elements of aggravated statutory rape beyond a reasonable doubt. The Defendant is not entitled to relief on this issue.

7

**B.** **DENIAL OF MOTIONS FOR PSYCHOLOGICAL COMPETENCY EVALUATION**

The Defendant next argues that the trial court erred in denying his pretrial motion for a competency evaluation made after counsel had concerns after interacting with the Defendant. The Defendant also asserts that the trial court erred in denying a renewed motion for an evaluation after the Defendant attempted suicide while incarcerated. In response, the State argues that the Defendant waived plenary review of these claims and that the trial court's denial of these motions did not amount to plain error. We agree with the State.

**1.** **Background**

About a month before trial on February 14, 2023, the Defendant's counsel filed a motion to have the Defendant evaluated for competency to stand trial. The motion itself did not identify reasons why an evaluation was sought. The motion appears to have been denied by the trial court, though, as is discussed below, the record does not contain a transcript or order showing such a denial.

At a later hearing five days before trial, the prosecutor informed the trial court that she had been told by the jail administrator, Lieutenant Daniel Powell, that the Defendant was "trying . . . not [to] make it to his trial." Lieutenant Powell had explained that the Defendant first attempted to get in a fight with a bunch of inmates so they would hurt him. When that was unsuccessful, the Defendant drank toilet bowl cleaner in what the jail staff classified as a suicide attempt. The Defendant was medically examined and evaluated by staff at Carey Counseling, who advised that he should be involuntarily committed to Western Mental Health Institution.

Defense counsel requested a continuance and asked the court to order a competency evaluation while the Defendant was institutionalized. The trial court, however, was concerned that the Defendant wanted to delay this trial and instead asked a representative from Carey Counseling to be brought to court that afternoon.

When the court reconvened, Matt Orphanides, the director of crisis services for Carey Counseling, and Lieutenant Powell were present. Mr. Orphanides said that he evaluated the Defendant and determined that he met the mental criteria for an involuntary committal. Mr. Orphanides clarified that the commitment evaluation had "nothing to do with whether [the Defendant] is competent or able to stand trial. Our assessment was strictly a crisis assessment based on the report that he had had a suicide attempt. There was concern for his safety, not competence."

8

Lieutenant Powell said the jail report reflected that an inmate said the Defendant had "made several statements . . . about he was going to lose his upcoming trial and that he was going to make sure that he did not make it to that date." After the Defendant ingested the cleaner, he was placed in protective care and poison control was contacted. From this testimony, the State argued that it was not clear that the Defendant intended to commit suicide.

The trial court found that the Defendant was attempting "to delay and continue this trial." The court further found that, according to the incident report, the Defendant did not intend to kill himself but instead wanted to delay his trial. The court also found no substantial evidence showing that the Defendant was "suffering from a mental disability that prevents him from assisting in the preparation of his case or that he was mentally incompetent at the time of the offense." The trial court directed Lieutenant Powell to keep the Defendant safe and allow him to consult with counsel until trial.

## 2. Waiver of Plenary Review

The State first argues that the Defendant waived these issues by failing to present them in his motion for a new trial. We have recognized that "[b]efore a defendant may raise an issue on appeal as the basis for seeking a new trial, the defendant must present the issue to the trial court in a timely, written motion for a new trial." *State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2 (Tenn. Crim. App. Oct. 30, 2023) (first citing Tenn. R. App. P. 3(e); and then citing Tenn. R. Crim. P. 33(b)), *no perm. app. filed*. Except for issues related to sentencing and the sufficiency of the convicting evidence, the failure to file a motion for a new trial waives plenary review of all issues on appeal that could have resulted in a new trial. *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010).

The Defendant did not preserve these issues by presenting them to the trial court in a timely motion for a new trial. *See State v. Whitson*, No. M2007-02197-CCA-R3-CD, 2009 WL 3787457, at *7 (Tenn. Crim. App. Nov. 12, 2009) ("The defendant claims he was incompetent before trial, during trial, and for sentencing purposes. The State contends the defendant waived this issue because it was not raised in the defendant's motion for new trial. We agree with the State that this issue is waived."), *perm. app. denied* (Tenn. Apr. 23, 2010). As such, the Defendant may obtain relief, if at all, under the standards governing plain error review. *See Howard v. State*, 604 S.W.3d 53, 62 (Tenn. 2020). We have recognized that "a party seeking plain error relief must generally raise and argue the issue in the party's briefing, just as the party would do with all other issues in the ordinary course of an appeal." *Funk*, 2023 WL 7130289, at *3. Because the Defendant recognizes his waiver of plenary review and requests that we conduct our analysis for plain error, we consider his issues further.

9

### 3. Plain Error Review

Our authority to review unpreserved issues for plain error is discretionary, and our supreme court has emphasized that this authority is to be "sparingly exercised." *See State v. Bledsoe*, 226 S.W.3d 349, 354 (Tenn. 2007). To this end, our supreme court has recognized that "[u]nlike plenary review, which applies to all claims of error that are properly preserved, plain error review is limited to those errors which satisfy five criteria." *State v. Vance*, 596 S.W.3d 229, 254 (Tenn. 2020). These criteria are as follows:

(a)     the record must clearly establish what occurred in the trial court;

(b)     a clear and unequivocal rule of law must have been breached;

(c)     a substantial right of the accused must have been adversely affected;

(d)     the accused did not waive the issue for tactical reasons; and

(e)     consideration of the error is "necessary to do substantial justice."

*See*, *e.g.*, *State v. Jones*, 589 S.W.3d 747, 762 (Tenn. 2019). Whether plain error exists "must depend upon the facts and circumstances of the particular case." *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000). Even then, however, the "plain error must be of such a great magnitude that it probably changed the outcome of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994).

The "defendant bears the burden of establishing all of these elements." *State v. Linville*, 647 S.W.3d 344, 354 (Tenn. 2022). As such, an appellate court "need not consider all of the elements when it is clear from the record that at least one [of] them cannot be satisfied." *State v. Reynolds*, 635 S.W.3d 893, 931 (Tenn. 2021). "Whether the plain error doctrine has been satisfied is a question of law which we review de novo." *State v. Knowles*, 470 S.W.3d 416, 423 (Tenn. 2016).

### a. Denial of Original Motion for a Competency Evaluation

The Defendant first argues that the trial court committed plain error in denying his original motion for a competency evaluation, which was filed about a month before the trial. The State responds that plain error relief cannot be granted with respect to this motion because the record fails to show what occurred in the trial court. We agree with the State.

10

The record reflects that on February 14, 2023, the Defendant filed a "Motion for Psychological Evaluation" to "determine if he is capable of participating in the upcoming trial in this matter." Although the Defendant acknowledges that the trial court denied this motion, no written order or transcript of a motion hearing appears in the appellate record. The absence of a transcript or order is significant here because, without them, the record does not clearly establish what occurred in the trial court or identify why the trial court denied the motion. *Cf. State v. Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *25 (Tenn. Crim. App. Jan. 14, 2020) ("We conclude that in the absence of a hearing transcript or an order being present in the appellate record, the record does not clearly establish what occurred in the trial court. Because the five factors for plain error relief have not been met, the Defendant is not entitled to relief on this basis."), *perm. app. denied* (Tenn. June 5, 2020). Because the Defendant is not entitled to plain error relief, we respectfully affirm the trial court's judgment denying the original motion for a competency evaluation.

### b.      Denial of Renewed Motion for a Competency Evaluation

The Defendant next argues that the trial court committed plain error in denying his renewed motion for a competency evaluation, which was made about five days before the trial. More specifically, the Defendant asserts that an evaluation was required because he made a "viable, reported suicide attempt" while he was incarcerated. The State responds that he has failed to show that a clear and unequivocal rule of law has been breached and that correcting any error is not required to do substantial justice. We agree with the State.

"The decision to grant an evaluation is within the power of the trial judge, and this [c]ourt will not reverse a denial of a mental evaluation absent a clear showing of abuse of discretion on the part of the trial judge." *State v. Segura*, No. W2010-00952-CCA-R3-CD, 2012 WL 4078910, at *18 (Tenn. Crim. App. Sept. 18, 2012) (citing *State v. Rhoden*, 739 S.W.2d 6, 16 (Tenn. Crim. App. 1987); *State v. Lane*, 689 S.W.2d 202, 204 (Tenn. Crim. App. 1984)), *perm. app. denied* (Tenn. Feb. 13, 2013). The discretionary nature of the decision to order an evaluation is important because where the law allows discretion to the trial court, the absence of an abuse of discretion does not breach a clear and unequivocal rule of law. *See State v. Murphy*, No. W2022-01108-CCA-R3-CD, 2024 WL 512549, at *10 (Tenn. Crim. App. Feb. 9, 2024) ("Respectfully, the Defendant's disagreement with the trial court's discretionary decision does not constitute a breach of a clear and unequivocal rule of law."), *perm. app. dismissed* (Tenn. June 20, 2024).

Importantly, this inquiry focuses on the Defendant's competency to stand trial, not merely on whether he has a mental health condition. "The standard for determining competency to stand trial is whether the accused has the capacity to understand the nature and object of the proceedings against him, to consult with counsel and to assist in preparing

11

his defense." *State v. Blackstock*, 19 S.W.3d 200, 205 (Tenn. 2000) (internal quotation marks and citations omitted). Thus, while evidence of a mental illness may be relevant to the inquiry, it may not alone be dispositive of a defendant's competency to stand trial. *See State v. Kiser*, 284 S.W.3d 227, 247 n.16 (Tenn. 2009) ("The fact that a person is mentally ill, displays bizarre, volatile, and irrational behavior, or has a history of mental illness, does not mean that he or she is incompetent to stand trial. A defendant may be fit for trial even though his mind is otherwise unsound." (quoting *Taylor v. State*, 156 P.3d 739, 763 (Utah 2007)).

Indeed, with respect to suicide attempts in particular, this court has recognized that "the empirical relationship between mental illness and suicide or suicide attempts is uncertain" and that "mental illness does not necessarily preclude competence to stand trial." *Wilcoxson v. State*, 22 S.W.3d 289, 314 (Tenn. Crim. App. 1999) (quoting *Drope v. Missouri*, 420 U.S. 162, 181 (1975)); *Sallee v. State*, No. W2008-01935-CCA-R3-PC, 2009 WL 4017159, at *3 (Tenn. Crim. App. Nov. 20, 2009) ("While we agree with the trial court that Petitioner had proven that he had attempted suicide near the time of the entry of his guilty plea, Petitioner did not prove that the suicide attempt affected his mental capacity to understand that he was pleading guilty."), *no perm. app. filed*. As such, while "a defendant's attempt to commit suicide is an act which suggests a rather substantial degree of mental instability by itself," "it does not automatically trigger the need for a competency hearing in every case." *State v. Flow*, 886 S.E.2d 71, 89 (N.C. 2023) (internal quotation marks and citation omitted); *United States v. Sterling*, 99 F.4th 783, 803 (5th Cir. 2024) (stating that a history of suicide attempts and depression failed to render a defendant incompetent as a matter of law); *Thompson v. State*, 88 So. 3d 312, 321 (Fla. Dist. Ct. App. 2012) ("[A] suicide attempt is not alone sufficient to raise a question about competency to stand trial."); *People v. Price*, 240 P.3d 557, 562 (Colo. App. 2010) ("A defendant's suicide attempt alone is not necessarily sufficient to establish a 'bona fide doubt' as to a defendant's competency to stand trial."). In other words, something more than mental instability alone is required to trigger the need for an examination of a defendant's *competency* to stand trial.

The Defendant has not shown that the trial court acted outside its discretion in denying his renewed motion for a competency evaluation. At the time of the motion, defense counsel did not voice any concerns about the Defendant's ability to understand the proceedings, consult with counsel, or assist in preparing his defense. *See Kiser*, 284 S.W.3d at 249 (recognizing that "a defendant's lawyer's assertions (or lack thereof)" are significant when determining a defendant's competence). Moreover, in the hearing that the trial court convened, no witness testified that a competency evaluation of the Defendant was needed or that the Defendant was incompetent to stand trial. Based on the proof that *was* offered, the trial court concluded that the Defendant's actions were an attempt to postpone the trial rather than to commit suicide. It also found that no substantial evidence suggested that the Defendant was "suffering from a mental disability that prevent[ed] him

from assisting in the preparation of his case." The record does not preponderate against these conclusions. Because the trial court acted within its discretion in denying a competency evaluation, no clear and unequivocal rule of law was breached. As such, the Defendant is not entitled to plain error relief, and we respectfully affirm the trial court's judgment denying the renewed motion for a competency evaluation.

## C.    DENIAL OF MOTION FOR A CONTINUANCE

In his statement of issues, the Defendant questions whether the trial court erred by denying his request to continue the trial after he was put on "suicide watch" in jail and after it was determined he should be involuntarily committed. However, the Defendant has not supported this issue with any argument in his brief.

"[S]imply raising an issue is not sufficient to preserve it for appellate review." *State v. Gooch*, No. M2022-01395-CCA-R3-CD, 2024 WL 2814624, at *4 n.4 (Tenn. Crim. App. June 3, 2024). Instead, Tennessee Rule of Appellate Procedure 27(a)(7) also requires that the appellant set forth an argument for each issue, setting forth the "reasons why the contentions require appellate relief" and containing "citations to the authorities and appropriate references to the record" (which may be quoted verbatim) relied on[.]" Reinforcing this requirement, Rule 10(b) of the rules of this court cautions that "[i]ssues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court."

In his brief, the Defendant does not make any argument in support of this issue. He also fails to provide citations to the record or other authorities showing that the trial court abused its discretion in denying a continuance. Because of the inadequacy of the Defendant's brief, we must respectfully conclude that the Defendant has waived appellate consideration of this issue. *See State v. Molthan*, No. M2021-01108-CCA-R3-CD, 2022 WL 17245128, at *2 (Tenn. Crim. App. Nov. 28, 2022), *no perm. app. filed*. The Defendant is not entitled to relief on this issue.

## D.    CUMULATIVE ERROR

Finally, the Defendant argues that the cumulative impact of the errors in this case prevented him from receiving a fair trial. The cumulative error doctrine applies when there have been "multiple errors committed in trial proceedings, each of which in isolation constitutes mere harmless error, but which when aggregated, have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." *State v. Hester*, 324 S.W.3d 1, 76 (Tenn. 2010). To that end, more than one actual error must exist before the cumulative error doctrine can apply. *Id.* at 77. Because the Defendant has failed to establish that any error has occurred, we conclude that he is not

entitled to cumulative error relief. *See State v. Paschel*, No. E2022-00900-CCA-R3-CD, 2023 WL 5975223, at *13 (Tenn. Crim. App. Sept. 14, 2023), *perm. app. denied* (Tenn. Mar. 7, 2024).

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to sustain the Defendant's convictions for rape and aggravated statutory rape. We also hold that the trial court did not commit plain error in denying the Defendant's motions for a competency evaluation and to continue the trial. Finally, we hold that the Defendant is not entitled to relief due to cumulative error. We respectfully affirm the judgments of the trial court.

_____
TOM GREENHOLTZ, JUDGE

14